Capitol Records, Inc., Plaintiff-Appellant, v. Gary A. Spies, Defendant-Appellee.

Gen. No. 54,315.

First District, Third Division.

October 22, 1970.

Rehearing denied November 12, 1970.

Arvey, Hodes & Mantynband, of Chicago (Sidney R. Zatz, J. Herzl Segal, and Jack H. Oppenheim, of counsel), for appellant.

Julius Lucius Echeles, Jo Anne F. Wolfson, Frederick F. Cohn, and Alan A. Ackerman, of Chicago, for appellee.

MR. JUSTICE McNAMARA delivered the opinion of the court.

Plaintiff Capitol Records, Inc. filed a complaint in the Circuit Court against defendant Gary A. Spies, doing business as Tape-A-Tape, alleging that Spies was pirating certain performances from recordings made by Capitol and praying that he be temporarily and permanently enjoined from such further action. After a hearing, the trial court denied Capitol's motion for a temporary injunction, and it brings this interlocutory appeal. Ill Rev Stats 1969, c 110A, § 307(a) (1). The issue on appeal is whether Spies may be enjoined from making and selling tapes of Capitol's recordings.

Capitol's complaint alleged that it was a California corporation engaged in the manufacture and sale of phonograph records and magnetic tapes. For this purpose, it had entered into contracts with various performers. Pursuant to these contracts and at great expense to itself, Capitol had embodied the performances of these various artists upon master recordings. It then manufactured copies for sale from these master recordings. The sale of each recording created liabilities on the part of Capitol to pay royalty fees to the artists and others who own various copyrights. To promote the sale of these recordings, Capitol expended large sums in advertising.

The complaint went on to state that Spies was engaged in pirating and appropriating these performances onto magnetic tapes, and subsequently selling them for a profit. Spies used the names of the performing artists on his tapes. He had not obtained any permission or a license to copy these performances from Capitol, and had paid nothing to Capitol for the appropriation. The complaint stated further that the above acts by Spies were calculated to take unlawful advantage of Capitol's goodwill, and constituted unfair competition and wrongful appropriation of the work, skill and expenditures of Capitol. The above acts by Spies also caused a likelihood of confusion as to the source of the tapes, and were deceptive trade practices. The complaint further charged that Spies had been unjustly enriched at the expense of Capitol, the performing artists and others having an interest in the performances. Capitol charged that these acts were causing irreparable damage, and prayed for an injunction, damages, and an accounting by Spies.

In his answer, Spies stated that what he did was permissible, and that he did not obtain the permission of Capitol because it was not necessary. He denied that he wrongfully appropriated Capitol's preformances; denied that there was a likelihood of confusion as to the source of the manufacture of his tapes; denied that his acts constituted unfair competition; and denied that he was unjustly enriched at Capitol's expense. The answer also stated that Spies attached a disclaimer to each tape which stated that no relationship existed between Tape-A-Tape and the original recording company

or with the original recording artists, and that no permission or license had been sought from any party to produce the tape.

At the hearing on Capitol's motion for a temporary injunction Capitol introduced evidence that it was in the business of manufacturing and distributing phonograph records, tapes and related items. It had contracted for the exclusive services of various performers, and in return had to pay the performers certain royalties and other fees. It also had to pay royalties to composers and copyright owners. Capitol spent between $50,000 and $75,000 on each record album before releasing it for sale.

Spies testified at the hearing that he had purchased Capitol records in a retail store and then taped them on a tape recorder. He sold about 1,500 tapes in five months. He placed a disclaimer on each tape, although some of the disclaimers may have been taken off. His tape cartridge was a different color than that of Capitol. He also testified that the persons who purchased his tapes did not confuse them with those of Capitol.

The trial judge, indicating that he was acting under the compulsion of two United States Supreme Court decisions, Sears, Roebuck & Co. v. Stiffel Co., 376 US 225 (1964), and Compco Corp. v. Day Brite Lighting, Inc., 376 US 234 (1964), and Compco Corp. v. Day Brite Lighting, Inc., 376 US 234 (1964), stated that he was unable to prohibit Spies from making and selling tapes of Capitol's recordings, and denied its motion for a temporary injunction. This appeal follows.

In the Sears case, defendant manufactured and sold lamps substantially similar to those made by plaintiff, and at a lower price. The lamp was not patented, and defendant copied a product designed by plaintiff. In the Compco case, defendant manufactured and sold fluorescent lighting fixtures substantially similar to that of plaintiff. The fixture was not patented, and defendant also copied plaintiff's product. In each case, the trial court had held that defendants were guilty of unfair competition, but the Supreme Court reversed those decisions, holding that the copying of unpatented products was permissible, despite any State laws to the contrary. The Supreme Court went on to say that to permit a State by

use of its law of unfair competition to prevent the copying of an article which could not be patented would be to allow the State to keep from the public something which federal law has said belongs to the public.

We believe that the facts of the instant case are clearly distinguishable from the Sears and Compco decisions, and we find that the trial court erred in denying Capitol's motion for a temporary injunction. Whereas in those cases the court was concerned with the copying of products which were not patented, in the instant case Spies was actually appropriating another's property. Rather than the Sears and Compco decisions, we find that the case of International News Service v. Associated Press, 248 US 215 (1918), is controlling. In that case, plaintiff gathered news at substantial cost to itself and distributed it to its members. Defendant would take the distributed news and sell it to its subscribers. The Supreme Court held that defendant was engaged in unfair competition and should be enjoined from pursuing such activity, and stated at pp 239–240:

> "In doing this defendant, by its very act, admits that it is taking material that has been acquired by complainant as the result of organization and the expenditure of labor, skill and money and which is salable by complainant for money, and that defendant in appropriating it and selling it as its own is endeavoring to reap where it has not sown, and by disposing of it to newspapers that are competitors of complainant's members is appropriating to itself the harvest of those who have sown."

Cases decided subsequent to Sears and Compco have distinguished between the copying of an unpatented or uncopyrighted product and the appropriation of another's property. In Grove Press, Inc. v. Collectors Publication, Inc., 264 F Supp 603 (DC Calif 1967), defendants were enjoined from photographing and reproducing an uncopyrightable book published by plaintiff. The court stated at pp 606–607 as follows:

> "Unfair appropriation of the property of a competitor is unfair competition and redressable in a situa-

tion of this kind despite the holdings in [Sears and Compco]. (Citations omitted.)

"Defendants' first edition is more than mere copying of Plaintiff's work, the Grove edition. In view of Plaintiff's expenditure of substantial sums in setting type and engraving plates, it would constitute unfair competition for Defendants to appropriate the value and benefit of such expenditure to themselves by photographing and reproducing Plaintiff's book through the offset-lithography process, thereby cutting their own costs and obtaining an unfair competitive advantage."

Several decisions subsequent to Sears and Compco in other jurisdictions have held that the activities precisely in issue in the instant case should be enjoined. In Capitol Records, Inc. v. Greatest Records, Inc., 43 Misc2d 878, 252 NYS2d 553 (1964), defendant made records from tape recordings of plaintiff's record albums. The trial court enjoined this activity, stating that "neither of these learned decisions (referring to Sears and Compco) stands for the proposition that this plaintiff is not entitled to protection against the unauthorized appropriation, reproduction or duplication of the actual performances contained in its records."

In Capitol Records, Inc. v. Erickson, 2 Cal App3d 526, 82 Cal Rptr 798 (1969), defendants acquired Capitol's tapes and records at nominal cost, and without plaintiff's permission, made and sold tape cartridges of these recordings. Defendants attached a disclaimer to their tape cartridges similar to the one used in the case at bar. The evidence in that case also indicated that Capitol went to great expense to produce its recordings. In affirming the trial court's issuance of a temporary injunction, the court held that defendant unfairly appropriated artistic products by Capitol's efforts, and that the appropriation constituted unfair competition. The court also found that defendant's use of a disclaimer did not negate the confusion to the public as to the source of the recorded performance. See also Tape Industries Ass'n of America v. Younger, — F Supp — (1970). Nor are we persuaded by

Spies' argument that the California courts have reached such results because, unlike Illinois, by statute that State specifically prohibits "tape piracy." Although referring to the statute, the decisions hold specifically that defendants were improperly appropriating plaintiffs' property.

The decisions limiting the effect of Sears and Compco and relying on the principles set forth in International News Service have been noted with approval by a number of commentators dealing with the subject. For example, in 2 Callmann Unfair Competition, Trademarks and Monopolies, § 60.4(c), at p 522, it was stated:

> "Despite the proliferating confusion generated by Sears and Compco, as reflected in subsequent decisions, it seems that the courts are increasingly inclined to limit the Supreme Court's sweeping statements wherever possible to the area of patented and copyrighted articles rather than to apply them to other areas of unfair competition."

Consequently, we hold that the Sears and Compco decisions do not apply to the case at bar. The evidence reveals that Spies was not merely copying unpatented or uncopyrighted articles, but that he was actually taking and appropriating Capitol's product itself—the actual sounds recorded on the albums. Spies was thus relieved of the necessity of contracting with various performers so that he might produce a recording; he needed only to wait until a particular rendition produced by Capitol became popular and then was able to take advantage of the existing market. It seems evident that the Supreme Court in Sears and Compco did not intend to condone this form of unfair competition.

Although we have found no Illinois decision factually similar to the instant case, the rationale behind prohibiting certain forms of unfair competition has been enunciated. Schulenburg v. Signatrol, Inc., 50 Ill App2d 402, 200 NE2d 615 (1964), involved the use of an alleged trade secret by former employes. The court, in enjoining such use, stated at pp 411–12 as follows:

> "The short cut used by defendants enabled them to compete with plaintiffs on equal terms by sparing

them the necessity of spending time and money in acquiring the 'know-how.' Competition is a desideratum in our economic system, but it ceases to serve an economic good when it becomes unfair."

This decision was affirmed by the Illinois Supreme Court, 33 Ill2d 379, 212 NE2d 865 (1965). See also James C. Wilborn & Sons, Inc. v. Heniff, 95 Ill App2d 155, 237 NE 2d 781 (1968).

Accordingly, the order of the Circuit Court is reversed, and this cause is remanded with instructions to grant Capitol's motion for a temporary injunction, and for further proceedings not inconsistent with the views expressed in this opinion.

Order reversed and cause remanded with directions.

DEMPSEY, P. J. and SCHWARTZ, J., concur.