COMPUMARKETING SERVICES COR-
PORATION, a corporation, Plaintiff,

v.

BUSINESS ENVELOPE MANUFACTUR-
ERS, INC., a corporation, Defendant.

No. 70 C 2600.

United States District Court,
N. D. Illinois, E. D.

June 8, 1972.

Lionel G. Gross, Roger B. Harris, Kenneth R. Gaines, Altheimer, Gray, Naiburg & Strasburger, Chicago, Ill., for plaintiff.

Richard P. Glovka, Henry Krasnow, Goldberg, Weigle, Mallin & Gitles, Chicago, Ill., for defendant.

MEMORANDUM OPINION
AND ORDER

McLAREN, District Judge.

Plaintiff Compumarketing Services Corp. ("Compumarketing") has sued defendant Business Envelope Man-

ufacturers ("Business Envelope") for breach of contract, conversion, misappropriation, and infringement of common law copyright. A non-jury trial was held and post-trial briefs were filed. The Court finds that the defendant breached its contract and that plaintiff's recovery is not precluded by Sears Roebuck & Co. v. Stiffel Co., 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) and Compco Corp. v. Day-Brite Lighting Co., 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964).

Compumarketing is in the business of compiling and marketing mailing lists to customers who use its lists in making direct mail solicitations to the businesses whose names and addresses appear on the lists. Business Envelope is in the business of manufacturing envelopes and selling them through the use of direct mail solicitations.

Compumarketing, and its predecessor corporation, did business with the defendant for at least five years prior to the transactions which are the subject of this lawsuit. From April 1967 through the end of 1968, plaintiff and defendant entered into numerous transactions whereby plaintiff supplied defendant with mailing lists printed on labels on a one-time-use-only basis. Defendant never copied any of these lists.

All of the transactions between plaintiff and defendant in 1967 and 1968 evolved in the same way and along the following lines: defendant's vice president would contact plaintiff's East Coast sales manager, and indicate a need for a mailing list. Plaintiff's sales manager would then forward the order to the Chicago office where it was reviewed and approved. Upon approval, a five-part, two-sided carbon form would be filled out designating the precise terms and conditions of the transaction.

The form was entitled "Production Order" and at the bottom of the first side thereof appeared the printed legend "ALL ORDERS SUBJECT TO THE TERMS ON THE REVERSE SIDE."

Among the terms included on the reverse side of each copy of the form was: "Lists provided in any other form, such as labels . . . are for one time use only and are not to be copied."

Upon being filled out, the fourth part of the carbon form, designated "Customer Copy," would be mailed to defendant. Subsequently, the order would be filled and the labels shipped to defendant along with the "Packing List" copy of the carbon form. The labels themselves came printed on sheets of paper which bore the following printed designation in four separate places on each sheet: "No Copies May Be Made Out of This List Without Express Written Permission From National Business Lists" (plaintiff's predecessor corporation).

■ Given this prior course of conduct, the apparent custom and usage in the trade, and the testimony of defendant's president and vice president, the Court finds that the lists in question were purchased in 1969 on a one-time-use-only basis, and that defendant breached its contract with the plaintiff by using some names and addresses on the lists more than once. Furthermore, the Court finds that this was not an inadvertent breach, since the Court finds that defendant's president and vice president were aware of the restrictions on the use of this information. The Court finds that defendant's evidence to the contrary is not persuasive.

The Court also finds that Sears and Compco, supra, do not preclude enforcement of this agreement. The Court was not dealing in those cases with a contractual relationship, and, in Lear, Inc. v. Adkins, 395 U.S. 653, 675, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), it declined to extend Sears-Compco to contractual relationships. See Painton & Co. v. Bourns, Inc., 442 F.2d 216, 225 (2d Cir. 1971).

■ Furthermore, this case involves misappropriation, not copying, and the

great majority of the courts which have considered the question have ruled that misappropriation is not within the scope of *Sears-Compco*. Note, The "Copying-Misappropriation" Distinction: A False Step In The Development Of The *Sears-Compco* Pre-Emption Doctrine, 71 Colum.L.Rev. 1444, 1445 n. 10 (1971). See, *e. g.*, Bailey v. Logan Square Typographers, Inc., 441 F.2d 47, 50 (7th Cir. 1971); Capitol Records, Inc. v. Spies, 264 N.E.2d 874, 877 (Ill.App.1970). The Court declines to follow the cases relied upon by defendant on this issue. See Columbia Broadcasting System, Inc. v. DeCosta, 377 F.2d 315, 321 (1st Cir. 1967); Cable Vision, Inc. v. KUTV, Inc., 335 F.2d 348, 352 (9th Cir. 1964). Whether the enforcement of the agreement is judged by its effect on federal patent-copyright law or its effect on competition in the mailing list market, this Court is unable to conclude that the agreement in question is an unreasonable one, or contrary to public policy. See Goldstein, The Competitive Mandate: From *Sears* to *Lear,* 59 Calif.L. Rev. 873, 900 (1971). This conclusion is reinforced by the fact that plaintiff made its lists available on alternative bases, *i. e.*, plaintiff's lists were available on an unlimited, as well as on a single-use, basis, on varying pricing arrangements. *Cf.* Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 137–140, 89 S.Ct. 1562, 23 L.Ed.2d 129 (1969).

██ The parties have advanced various formulae for assessing damages. The Court finds the contract price ($7,188.16) for the list in 1969, multiplied by the number of unauthorized uses (six), to yield a practicable damage figure. The defendant also is enjoined from making further mailings based on the 1969 list. Within fifteen days hereof, plaintiff will prepare and supply to the Court a proposed form of injunction.

Although the Court has found that defendant's officers knew of the use-limitation provision and might be said to have wilfully breached its contract, punitive damages will not be awarded. However, a judgment of $43,128.96 will be entered, and costs will be taxed to defendant.

This Opinion shall serve as and for the Court's findings of fact and conclusions of law.

It is so ordered.