**WARRINGTON ASSOCIATES, INC., a Minnesota corporation, Plaintiff,**

v.

**REAL-TIME ENGINEERING SYSTEMS, INC., an Illinois corporation, Defendant.**

No. 80 C 1349.

United States District Court, N. D. Illinois, E. D.

Aug. 26, 1981.

Samuel A. Haubold, Jack A. Rovner of Kirkland & Ellis, Chicago, Ill., for plaintiff.

Michael Piontek, Thomas R. Juettner of Gary, Juettner & Pyle, Chicago, Ill., for defendant.

### MEMORANDUM AND ORDER

MORAN, District Judge.

Plaintiff, Warrington Associates, Inc. ("Warrington"), a designer and marketer of computer software programs for banks and other financial institutions, has filed this action alleging the wrongful appropriation

and use of its trade secrets and proprietary materials by defendant, Real-Time Engineering Systems, Inc. ("Real-Time"). More specifically, in its five-count amended complaint, Warrington alleges that Real-Time, individually and in conspiracy with others, misappropriated Warrington's secret computer software programs (Count I), unlawfully interfered with and conspired to breach contractual assurances of confidentiality owed to Warrington (Counts II and III), infringed Warrington's copyrights (Count IV), and engaged in unfair competition (Count V).

Now before the court is what was, initially, Real-Time's motion to dismiss all but the federal copyright claims on the ground that the common law tort counts are preempted by the Copyright Act of 1976, 17 U.S.C. § 101 et seq. Both sides, however, have submitted extensive evidence outside the pleadings, as well as legal memoranda raising additional issues and sounding like post-trial briefs. In light of these submissions, pursuant to Fed.R.Civ.P. 12(b), the motion has been regarded as one for summary judgment. Stripped of their hyperbole, the memoranda raise several discrete issues: (1) whether the common law trade secrets claims are preempted by federal law; (2) if they are not, whether Warrington, by securing copyright protection for its User's Manual, has so extensively disclosed its confidential information so as to forfeit any common law protection for those secrets; and (3) whether Real-Time intended to pirate Warrington's materials. Because the court concludes, first, that the trade secrets claims are not preempted, and second, that genuine material issues of fact remain as to Real-Time's intent to misappropriate as well as the extent to which the information was disclosed without assurances of confidentiality, the motion for summary judgment is denied.

### A. Legal Issues: Preemption.

The scope of federal preemption of state law by the Copyright Act is prescribed by that statute itself. In Section 301(b), the Act provides:

Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any State with respect to

\* \* \* \* \* \*

(3) activities violating legal or equitable rights that are not equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106.

■ An analysis of the interests secured by Copyright and trade secret law makes plain that the claims are not "equivalent" as intended by the Congress. It is well-settled that copyright protection extends not to an idea itself, but rather to the particular *expression* used by its author. *Sid & Marty Krofft Television Productions, Inc. v. McDonald's Corporation*, 562 F.2d 1157 (9th Cir. 1977); *Universal Athletic Sales Co. v. Salkeld*, 511 F.2d 904 (3d Cir. 1975). In contrast, the protection provided by the common law of trade secret misappropriation extends to the very ideas of the author, subject, of course, to the requirement that the idea has some originality and is as yet undisclosed or disclosed only on the basis of confidentiality. *Ferroline Corp. v. General Aniline & Film Corp.*, 207 F.2d 912, 921 (7th Cir. 1953); *Wesley-Jensen, Inc. v. Reynolds*, 182 U.S.P.Q. 135 (N.D.Ill.1974). The practical distinction between the two interests is manifest. While disclosure of the expression does not vitiate rights secured by copyright law, that same disclosure may well strip the underlying idea of its confidentiality, and thus its status as a trade secret. To a certain degree the two respective rights in intellectual property interact. To the extent a work has been copyrighted and published, the chances of unprivileged disclosure may increase. But the mere fact that an expression is copyrighted does not, in and of itself, disclose the trade secret or eliminate its mantle of confidentiality.

In light of the analysis expressed above, it is hardly surprising that neither Congress nor the courts have viewed the federal Copyright Act as preempting the common law of trade secret misappropriation. For example, in the legislative history of the

Copyright Act, the House Committee Report states:

> The evolving common law rights of "privacy," "publicity," and trade secrets, . . . would remain unaffected so long as the causes of action contain elements such as an invasion of personal rights or a breach of trust or confidentiality . . . .

H.Rep.No. 94–1476, 94th Cong., 2d Sess. 132 (1976) *reprinted in* 5 U.S.Code Cong. & Admin.News at 5746–5747 (1976).

■ Both federal and state courts have concurred. In an analogous context, the Supreme Court found nothing incompatible between the law of trade secrets and federal patent statutes. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 94 S.Ct. 1879, 40 L.Ed.2d 315 (1974). If anything the congruence and, concomitantly, the likelihood of preemption, between patent and trade secret law is stronger than between trade secret and copyright law. *See also, Synercom Technology, Inc. v. University Computing Co.*, 474 F.Supp. 37 (N.D.Tex.1979); *Compumarketing Services Corp. v. Business Envelope Manufacturers, Inc.*, 342 F.Supp. 776, 777 (N.D.Ill.1972). Finally, whether Wisconsin or Minnesota law is applied,[1] state law provides an area of protection extending beyond copyright. The highest courts of both states have continued to recognize causes of action for trade secret misappropriation subsequent to the amendment of the federal Copyright Act in 1976. The common law of each of these forums stresses that the trade secrets tort is premised on concepts of breach of trust and confidentiality, and not copying. *See Eutectic Welding Alloys Corp. v. West*, 281 Minn. 13, 160 N.W.2d 566, 570 (1968); *Cherne Industrial, Inc. v. Grounds & Associates, Inc.*, 278 N.W.2d 81 (1979); *Instrumentation Services, Inc. v. General Resource Corp.*, 283 N.W.2d 902 (1979) (unfair competition). *See also, Gary Van Zeeland Talent, Inc. v. Sandas*, 84 Wis.2d 202, 267 N.W.2d 242 (1978); *Abbott Laboratories v. Norse Chemical Corp.*, 33 Wis.2d 445, 147 N.W.2d 529 (1967).

■ Accordingly, the court holds that the Copyright Act does not preempt Warrington's common law tort claims in this action.

*B. Factual Issues: Disclosure, Access and Intent.*

■ As noted above, although the Copyright Act does not preempt Warrington's trade secret claim, the fact that it registered its User's Manual for a copyright might well affect the continued secrecy of the ideas in that manual for which Warrington seeks trade secret protection. However, on the basis of the record before the court, no final determination on this issue can be made at this time. Viewing the evidence favorably to Warrington, deposition testimony permits the inference that Warrington only released the copyrighted manual after receiving assurances of confidentiality from the users. Thus, while Warrington's self-serving declaration that it registered the manual with the Copyright Office as "unpublished" does not, in itself, defeat Real-Time's claim that Warrington's information is in the public domain, the court cannot conclude, as a matter of law, that Warrington's proprietary materials have lost their mantle of confidentiality.[2]

1. As this is a diversity action, substantive state law governs the common law counts. Concurrently, as an Illinois court, that state's choice of law rules also apply here. *Klaxon v. Stentor Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1115 (1941). In this instance, the parties have assumed that Wisconsin law would determine the common law claims. While not rejecting this view, the Court raises the possibility that under Illinois' "most significant relationship" approach to tort claims, *Ingersoll v. Klein*, 46 Ill.2d 42, 45, 262 N.E.2d 593 (1970), the law of the state of Minnesota may govern here. A final determination of this issue is not necessary since the result reached herein does not vary with the application of Minnesota or Wisconsin law.

2. Real-Time relies heavily on the fact that Warrington provided the Kellogg Bank with a copy of its Manual prior to the execution of certain confidentiality agreements. This fact alone, however, does not prove that the information was no longer confidential or that Warrington failed to take appropriate precautions against disclosure. The evidence indicates that it was the practice in the computer software industry that no manuals were provided absent assurances of confidentiality. It is quite possible

Similarly, summary judgment also is premature with respect to other issues raised by Real-Time. For example, even assuming that Real-Time had access only to Warrington's User's Manual (as opposed to the Operations Manual and computer source tapes), the deposition testimony of Richard Mulligan, Real-Time's President, indicates that the information contained in the User's Manual is of such a highly technical nature that pirating of Warrington's trade secrets may have been possible from this source alone. As such, the fact that Real-Time's access to Warrington's materials was restricted is not determinative on summary judgment.

Finally, genuine issues of fact remain concerning Real-Time's intent to misappropriate Warrington's trade secrets. Admittedly, Warrington has not yet submitted any direct evidence demonstrating Real-Time's actual knowledge of Warrington's nondisclosure agreements. But such evidence hardly is essential. to preclude summary judgment here. Mulligan's deposition testimony reveals that the overwhelming industry practice was to make available software packages upon pledges of confidentiality. Mulligan acknowledged at this deposition that Real-Time had never previously been afforded such extensive access to a competitor's materials when it proposed to develop compatible software programs for prospective clients. With these facts in the record, it is not necessary to accept Warrington's rather strident description of Real-Time's deal with the Kellogg Bank as a "kickback" in order to draw the inference that Real-Time nevertheless had notice of the Bank's confidentiality obligations and intended to disregard them. Accordingly, the motion for summary judgment is premature and is denied.

*C. Co-Conspirator Claims.*

■ There is, however, one point raised in Real-Time's motion that is well-taken. In its complaint, Warrington alleges that Real-Time and Mulligan were co-conspira-

tors in the pirating of Warrington's secrets. Normally, however, a corporation cannot conspire with its own officers. *Nelson Radio & Supply Co. v. Motorola*, 200 F.2d 911, 914 (5th Cir. 1952). Warrington seeks to avoid the application of this rule by citing the narrow exception created by the Fourth Circuit in *Greenville Publishing Co. v. Daily Reflector, Inc.*, 496 F.2d 391, 399 (4th Cir. 1974). In *Greenville Publishing*, the court recognized that a conspiracy between a corporate entity and its officer was possible where the officer had an independent stake in the allegedly illegal activity. Apparently citing the *Greenville* exception has proved far easier for Warrington than providing facts which might support its application. Simply put, Warrington has raised no evidence which suggests that Mulligan's interests anything but complimented those of Real-Time. Indeed, Real-Time appears to be a small corporate entity, and largely the instrumentality for Mulligan's individual efforts. Accordingly, the references concerning Mulligan and Real-Time as co-conspirators in the pleadings will be stricken.

that the Bank was given an advance copy of the Manual only upon the understanding that such information was not to be disclosed and in

contemplation of the impending execution of the actual nondisclosure agreements.