DATA GENERAL CORPORATION
and Data General Service,
Inc., Plaintiffs,

v.

GRUMMAN SYSTEMS SUPPORT
CORPORATION, Defendant.

Civ. A. No. 88–0033–S.

United States District Court,
D. Massachusetts.

June 3, 1992.

Robert S. Frank, Jr., Brian A. Davis, Robert M. Buchanan, Jr., Choate, Hall & Stewart, Boston, Mass., for plaintiffs; Jacob Frank, Morris G. Nicholson, Data General Corp., Westboro, Mass., of counsel.

Ronald S. Katz, Gary L. Benton, Jeremy A. Cody, Coudert Brothers, San Francisco, Cal., Paul F. Ware, Jr., David J. Apfel, Goodwin, Procter & Hoar, Boston, Mass., for defendant.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTIONS TO BIFURCATE AND FOR PARTIAL SUMMARY JUDGMENT

SKINNER, District Judge.

Plaintiffs Data General Corporation and Data General Service, Inc., (Data General) and defendant Grumman Systems Support Corporation (Grumman) are competitors in the field of computer repair service. Data General also creates computer software and manufactures computers and related equipment. Data General instituted this action under the federal copyright laws, accusing Grumman of infringement by Grumman's use and copying of certain software (ADEX software) which was developed by Data General for use in diagnosing problems in Data General manufac-

tured computers. Data General also makes several related state law claims. Grumman contests that it infringed the copyright and asserts counterclaims under several theories.

The court has ruled on several motions in this case. Extensive discovery has occurred and the parties are within months of trial. Grumman now moves the court to bifurcate the damages and liability portions of the case for trial and also moves for partial summary judgment. Grumman's summary judgment theories are twofold: it argues that Data General cannot recover statutory copyright damages and attorneys' fees because Data General failed to register its copyright prior to the alleged infringement, and that Data General's state law claims are preempted by federal copyright law.

On April 1, 1992, I issued a memorandum and order on these motions. Data General moved for reconsideration of that portion of my order which addressed federal preemption of Data General's state law claims for misappropriation of trade secrets (Counts II and III of the complaint). On May 21, 1992, I responded by withdrawing my April 1, 1992 memorandum in its entirety and vacating the portion of the order granting summary judgment on Counts II and III. This memorandum and order replaces the April 1 memorandum in its entirety and that portion of the April 1 order which I vacated on April 21.

Facts

The following facts are uncontroverted: Data General's ADEX software is an unpublished work for purposes of copyright law. The software originally produced was dubbed Revision (Rev.) 0.0. In order to meet changing needs, the software was revised several times, each new version being derived from the prior version. Grumman has used many of the versions of ADEX in its business, and the earliest versions, Revs. 0.0 and 1.0, were used by Grumman since before Data General had registered ADEX with the Copyright Office of the United States. Data General registered Revs. 2.0, 3.0, and 4.0 in November, 1986 and Revs. 5.0, 6.0, and 7.0 in July,

1988. The parties contest whether Grumman began using some of these later versions before Data General registered them.

## I  Bifurcation

Fed.R.Civ.P. 42(b) provides that a district court may order separate trials of any claim or issue in the interest of convenience or to avoid prejudice. The decision is committed to the sound discretion of the court, *see Kisteneff v. Tieman*, 514 F.2d 896, 897 (1st Cir.1975), and separation "is not to be routinely ordered." Advisory Committee Note to the 1966 amendment of Rule 42(b).

I am not inclined to allow bifurcation in a case in which the parties demand trial by jury, the liability portion of the trial will likely be long and complex, and there is a distinct possibility that issues of damages and liability will overlap. In the interest of fairness to the parties and judicial economy, the case should be tried as a whole to the same jury. *See Franchi Constr. Co. v. Combined Ins. Co.*, 580 F.2d 1, 7 (1st Cir.1978); *Continental Cablevision, Inc. v. Storer Broadcasting Co.*, 653 F.Supp. 451, 464 (D.Mass.1986).

## II  Statutory Damages and Attorneys' Fees

Section 412 of the Copyright Act, 17 U.S.C. § 101 *et seq.*, provides: "... no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration ..." The parties agree that this provision shields Grumman from liability for statutory damages and attorneys' fees for Grumman's use of Revs. 0.0 and 1.0. Grumman argues that this provision also shields it from these measures of liability flowing from Grumman's use of any version of ADEX because the statutory damages provision calls for all parts of derivative works to be treated as if they were one, and all of the follow-on revisions are derivative of ADEX 0.0.

### a) Statutory Damages

■ Under 17 U.S.C. § 504(c), a plaintiff alleging copyright infringement may elect fixed damages in lieu of actual damages. These fixed damages, known as "statutory" damages, may only be awarded once for each original work copyrighted, and may not be awarded for works which are derivative of the original work. *See* 17 U.S.C. § 504(c)(1). "For the purposes of this subsection, all the parts of a compilation or derivative work constitute one work." *Id.*

"A 'derivative work' is a work based upon one or more preexisting works ... A work consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship, is a 'derivative work.' " 17 U.S.C. § 101. Data General alleges in its complaint that "[a]ll subsequent releases of ADEX are closely similar to and are derived from the original release." I hold that the various revisions of ADEX are derivative of Rev. 0.0. In accordance with § 504, statutory damages are therefore limited to those which flow from Grumman's use of ADEX 0.0, and in accordance with § 412, Grumman is not liable for statutory damages for its use of ADEX 0.0 because that work had not been registered at the time Grumman began using it. Thus, Grumman is not liable for statutory damages for using any versions of ADEX.

### b) Attorneys' Fees

Grumman cites *Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 609 F.Supp. 1325 (E.D.Pa.1985) as authority for the proposition that under § 412, attorneys' fees, like statutory damages, are barred as to later derivative works where infringement of the original work had preceded registration. I disagree. In *Whelan Associates,* the court did not hold that § 412 bars attorneys' fees for infringement of a separately registered derivative work because of pre-registration infringement of an original work. Rather, the court held that "commencement" of infringement in that case began prior to registration of the original work. The court was not called

upon to address whether another registered work was a "derivative work," with its own life for purposes of this statutory provision, *id.*, 609 F.Supp. at 1330–31, and thus did not rule on the proposition which Grumman advocates. Neither party cites a case which addresses this precise question, and I have found none.

■ Although the statutory damages provision, section 504(c), states that all derivative works constitute one work "for the purposes of this subsection," the attorneys' fees provision, § 505, which was adopted along with § 504, contains no such language. As a general rule, "where Congress includes particular language in one section of the statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S.Ct. 296, 301, 78 L.Ed.2d 17 (1983). The plain meaning of the statute allows for derivative works to be treated as separate works for purposes other than for the calculation of statutory damages. Legislative history is in accord. "Subsection (c)(1) makes clear, however, that *although [compilations and derivative works] are regarded as independent works for other purposes,* 'all the parts of a compilation or derivative work constitute one work' for this purpose [statutory damages]." Copyright Law Revision, H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132, *reprinted in* 5 U.S.Code Cong. & Admin.News 5659, 5778 (1976) (emphasis added). I hold that for purposes of awarding attorneys' fees under § 505, separately registered derivative works are not to be considered as constituting the same work as the original. Consequently, § 412 does not bar the award of attorneys' fees for infringement of such separately registered derivative works.

■ Because there is no dispute that Revs. 0.0 and 1.0 were infringed prior to registration, under § 412, attorneys' fees may not be awarded for any infringement which Data General proves with respect to those works. Because a genuine dispute exists as to whether infringement of later

works began after registration of those works, partial summary judgment on the issue of attorneys' fees is not appropriate at this time.

### III  Federal Preemption

Section 301 of the Copyright Act provides:

(a) ... all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by section 102 and 103 ... are governed exclusively by this title. [On and after January 1, 1978] no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

■ State claims are preempted if two conditions are met. *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 199–200 (2d Cir.1983), *rev'd on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). First, the work of authorship in which rights are claimed must fall within the subject matter of copyright as defined by §§ 102 and 103. *Id.* The parties agree that the computer software at issue is governed by copyright law, satisfying this condition.

The second condition is that the state created right must be equivalent to one of the exclusive rights created by the Copyright Act. *Id.* See also *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 650 F.Supp. 838 (D.Mass.1986). The *Harper & Row* court explained the nature of this condition:

When a right defined by state law may be abridged by an act which, in and of itself, would infringe one of the exclusive rights, the state law in question must be deemed preempted. Conversely, when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the rights involved are not equivalent and preemption will not occur.

*Id.,* 723 F.2d at 200 (citations omitted). This condition has been called the "extra element" test. *See* 1 *Nimmer on Copyright,* § 1.01[B][1] at 1–14 (1991). In *Harper & Row* the court indicated, however, that merely alleging a state law violation which requires proof of extra elements which differ from those necessary to prove copyright infringement "does not establish qualitatively different conduct on the part of the infringing party, nor a fundamental nonequivalence between the state and federal rights implicated." *Id.,* 723 F.2d at 201. The crux of the inquiry is whether the claimed state created right is qualitatively similar enough to the right protected by federal law to be termed "equivalent" to, and thus preempted by, the federal law.

### a) Conversion

■ In Count V, Data General alleges that Grumman physically took possession of some copies of the software which Data General owned, and Grumman retained the property for years, until this court finally ordered Grumman to turn them over to Data General.

Under Massachusetts law, conversion is established by proving "the exercise of dominion or control over the personal property of another." *Third Nat. Bank v. Continental Ins. Co.,* 388 Mass. 240, 244, 446 N.E.2d 380 (1983). The tort involves the wrongful taking or possession of the physical property of another. *See* Restatement of Torts (Second) § 222A, Illustrations 2, 8.

Grumman does not directly argue that Data General has failed to show a basis for conversion, but apparently views the conversion of the tapes as *de minimis,* arguing that Data General's real difficulty is with Grumman's copying and using ADEX, rather than with taking the physical property. Grumman may be correct in assuming that the copyright claim is more important than the conversion claim in this case, but I find that Data General has also made a colorable claim that Grumman converted valuable physical property of Data General. Such a claim is not preempted by copyright law. *See Oddo v. Ries,* 743 F.2d 630, 635 (9th Cir.1984). *But cf. Harper & Row, supra,* 723 F.2d at 201 (holding that temporary removal of manuscript for purposes of

copying was insufficient basis to maintain claim of conversion).

### b) Unfair Competition

■ Grumman contends that Count IV of the complaint, which alleges unfair competition, is based solely on the premise that Grumman misappropriated Data General's software and that the claimed right to be free from such misappropriation is fundamentally equivalent to its rights under copyright law. Data General counters by describing the so-called "palming-off" strand of Massachusetts unfair competition law. Data General then asserts that it will prove at trial wrongful acquisition and possession of the software, which is an "extra element," essential to the unfair competition claim and not equivalent to the activities proscribed by the Copyright Act.

Although an unfair competition claim based on allegations of "palming off" another's work as one's own is not fundamentally equivalent to a copyright claim, *see Donald Frederick Evans & Associates, Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir.1986), Data General cannot maintain a claim under this theory because the complaint contains no allegation that Grumman committed this tort. To the extent that the unfair competition claim is, in essence, a claim that Grumman unfairly competed by misappropriating Data General's protected software, the claim is preempted because it is a restatement of, and fundamentally equivalent to, the copyright infringement claim. *See Del Madera Properties v. Rhodes and Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir.1987); *Schuchart & Associates, Professional Engineers, Inc. v. Solo Serve Corp.*, 540 F.Supp. 928, 944 (W.D.Tex.1982). *See also Warner Bros., Inc. v. American Broadcasting Cos.*, 720 F.2d 231, 247 (2d Cir.1983) ("state law claims that rely on the misappropriation branch of unfair competition are preempted").

### c) Unjust Enrichment

■ Count VI of the complaint alleges a claim for unjust enrichment. This claim is for damages for the alleged violation of Data General's exclusive right to control the use of the copyrighted materials, and is thus another repackaged allegation of copyright infringement. Such a claim is preempted by federal law. *See Ehat v. Tanner*, 780 F.2d 876 (10th Cir.1985), *cert. denied*, 479 U.S. 820, 107 S.Ct. 86, 93 L.Ed.2d 39 (1986); 1 *Nimmer on Copyright*, § 1.01[B], p. 1–30.2, fn. 76.7 and accompanying text (1991).

Data General alternatively argues that summary judgment on the unjust enrichment claim is inappropriate in this case because Grumman has introduced an additional legal basis for the claim through its own pleadings. Data General's reasoning is as follows: Grumman has stated, as an affirmative defense to the copyright claim, that a 1976 settlement agreement between Data General and Grumman's corporate predecessor in interest allowed for Grumman to use the ADEX software. In a 1988 argument to this court dealing with another motion, Grumman conceded that under the settlement agreement it is required to pay a reasonable royalty to Data General for the use of ADEX. Grumman has never paid or offered to pay any royalties for ADEX. Data General concludes that Grumman's own affirmative pleadings have demonstrated that it has acted inequitably, and that the claim for unjust enrichment should withstand a summary judgment motion not because Grumman infringed Data General's copyrights, but because Grumman has failed to pay for what Grumman claims is a permitted use of copyrighted materials.

■ Data General's alternative theory does not support the claim as alleged. The claim upon which Grumman's motion must be decided is the one alleged in the complaint, and the only unjust enrichment claim which can be fairly read therein is for an award based on Grumman's alleged copyright infringement. As such, the claim is preempted.

### d) Misappropriation of Trade Secrets

Finally, Grumman moves for summary judgment on Counts II and III. Count II alleges common law misappropriation of

trade secrets and confidential information, and Count III alleges a violation of M.G.L. c. 93, § 42, the Massachusetts codification of this tort.

The rights protected by trade secret law and copyright law are not "equivalent" for purposes of federal preemption. *See* 1 R. Milgrim, *Milgrim on Trade Secrets* § 2.06A[3], at 2–146 (1992) ("Trade secret law protects content irrespective of form of expression; copyright law protects form of expression but not underlying ideas"). Legislative history shows that Congress intended that state tort law of misappropriation of trade secrets not be preempted by federal copyright law as long as there is an extra element involving a breached duty to the plaintiff which renders the tort different in kind from copyright infringement:

> The evolving common law rights of "privacy," "publicity," and "trade secrets," and the general laws of defamation and fraud, would remain unaffected as long as the causes of action contained elements, such as invasion of personal rights or breach of trust or confidentiality, that are different in kind from copyright infringement.

Copyright Law Revision, H.R.Rep. No. 1476, 94th Cong., 2d Sess. 132, *reprinted in* 5 U.S.Code Cong. & Admin.News 5659, 5748 (1976).

Under Massachusetts trade secret law, a third party who knowingly benefits from a trade secret which a person in a confidential relationship obtained from the plaintiff is liable to the plaintiff for the misappropriation of that trade secret. *See Curtiss–Wright Corp. v. Edel–Brown Tool & Die Co.*, 381 Mass. 1, 407 N.E.2d 319, 322 n. 2 (1980). The Restatement of Torts similarly provides:

> One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if ... (c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third per-

son's disclosure of it was otherwise a breach of his duty to the other....

Restatement of Torts § 757 (1939).

Data General argues that its trade secrets were wrongfully retained by former employees and customers of Data General in violation of their duties of confidentiality to Data General, that Grumman knew that the contents of the software were trade secrets, and that Grumman knowingly benefited from the wrongful conduct by acquiring, possessing, and using ADEX. The record evidence is sufficiently ambiguous to preclude summary judgment.

Since this claim is premised at least in part on the alleged wrongful acquisition or retention of trade secrets, the claim is not equivalent to, and thus not preempted by, federal copyright law. *See Warrington Associates, Inc. v. Real–Time Engineering Systems, Inc.*, 522 F.Supp. 367 (N.D.Ill. 1981). This case is distinguishable from *Computer Associates Int'l., Inc., v. Altai, Inc.*, 775 F.Supp. 544, 564 (E.D.N.Y.1991) because in that case the defendant's *copying and use* of the plaintiff's computer software was the plaintiff's sole theory of recovery on the trade secret claim, whereas here the plaintiff relies on a theory of wrongful *acquisition* of the actual tapes in breach of a duty. The court in *Altai* recognized this distinction by stating, "Were [the plaintiff's] allegations premised on a theory of illegal *acquisition* of a trade secret, .... the preemption analysis might be different...." *Id.*, 775 F.Supp. at 565 (emphasis in original). Because the statutory codification of the tort of misappropriation of trade secrets does not appear to alter the common law prima facie elements for this tort, Data General's statutory claim is similarly not preempted by federal copyright law.

## IV Conclusion

Accordingly, Grumman's motion to bifurcate is denied. Grumman's motion for partial summary judgment on the issue of statutory damages is allowed. Grumman's motion for partial summary judgment on the issue of attorneys' fees is allowed with respect to the fees associated with proving

infringement of Revs. 0.0 and 1.0 and denied otherwise. Grumman's motion for partial summary judgment on Counts IV and VI is allowed. Grumman's motion for partial summary judgment on Counts II, III, and V is denied.