**PATRICIA KENNEDY & COMPANY, INC., Plaintiff,**

v.

**ZAM–CUL ENTERPRISES, INC. Ambulance Systems of America, Inc., Defendants.**

**Civ. A. No. 92–12772–Z.**

United States District Court, D. Massachusetts.

July 1, 1993.

Memorandum and Order on Denial of Reconsideration Aug. 23, 1993.

54

Hugh A. Starkey, Simonds, Winslow, Willis & Abbott, Boston, MA, for plaintiff.

Robert B. Gordon, Eric Jaeger, Ropes & Gray, Boston, MA, Gregory F. Galvin, South Weymouth, MA, for defendants.

## MEMORANDUM AND ORDER

COLLINGS, United States Magistrate Judge.

### Introduction

In its complaint, the plaintiff Patricia Kennedy & Company, Inc. (hereinafter "Kennedy & Co.") alleged that the defendants Zam–Cul Enterprises, Inc. and Ambulance Systems of America, Inc. (hereinafter collectively "ASA") had infringed its rights under the federal copyright law and, further, had en-

gaged in unfair or deceptive practices in violation of Massachusetts General Laws Chapter 93A. During a three-day trial in early May of this year, the copyright claim was tried to a jury while the Chapter 93A claim simultaneously was tried to the Court. On May 12, 1993, in answer to special interrogatories, the jury returned a verdict in favor of Kennedy & Co., awarding the plaintiff eighteen thousand seven hundred and fifty dollars ($18,750.00) as damages to compensate it for the economic harm caused by the defendants' infringement.

After the jury was discharged, a conference was held with counsel to discuss the remaining state law claim. At that time, the Court queried whether the plaintiff's Chapter 93A claim was preempted by the Copyright Act. In the ensuing colloquy, it was agreed that this threshold legal issue should be resolved before the merits of the plaintiff's claim were addressed. At the Court's direction, the parties have filed memoranda of law on the preemption question and the issue now is ripe for decision.

### Discussion

The federal Copyright Act incorporates an explicit preemption provision, to wit:

On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a).

The seeming breadth of this provision is circumscribed by section 301(b), which provides in pertinent part:

Nothing in this title annuls or limits any rights or remedies under the common law or statutes of any state with respect to ... activities violating legal or equitable rights

that are not equivalent to any of the exclusive rights within the general scope of copyright as specified in section 106.

17 U.S.C. § 301(b)(3).

To complete the statutory framework, section 106 sets forth the exclusive rights that an owner enjoys in copyrighted works as follows: (1) the right to reproduce the copyrighted work; (2) the right to prepare derivative works; (3) the right to distribute, by sale or otherwise, copies of the copyright work; (4) with respect to particular types of artistic works, the right to publicly perform them; and (5) the right to publicly display the copyrighted works. 17 U.S.C. 106(1)–(5); *See generally, Computer Associates International, Inc. v. Altai, Inc.,* 982 F.2d 693, 716 (2 Cir., 1992).

■ Parsed to its essentials, section 301 establishes a bipartite test for the preemption of state statutory or common law claims. The first consideration is that "the work of authorship in which rights are claimed must fall within the 'subject matter of copyright' as defined in §§ 102 and 103 of the Act." *Harper & Row, Publishers, Inc. v. Nation Enterprises,* 723 F.2d 195, 200 (2 Cir., 1983), *rev'd on other grounds,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985); *see also Data General Corporation v. Grumman Systems Support Corporation,* 795 F.Supp. 501, 505 (D.Mass., 1992); *Quincy Cablesystems, Inc. v. Sully's Bar, Inc.,* 650 F.Supp. 838, 849 (D.Mass., 1986). There is no question that the first prong of the preemption test is met in the instant case, the jury having found that Kennedy & Co. was the owner of an original work protected by the Copyright Act. *See,* Jury Verdict # 29, question 1.

■ The second consideration in the two-part preemption analysis is whether the state law asserted by a claimant creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106." 17 U.S.C. § 301(a). This requirement has been construed as meaning

When a right defined by state law may be abridged by an action which, in and of itself, would infringe one of the exclusive rights, the state law in question must be

deemed preempted. Conversely, when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the rights involved are not equivalent and preemption will not occur.

*Harper & Row, Publishers, Inc. v. Nation Enterprises, supra,* 723 F.2d at 200 (citations omitted); *Computer Associates International, Inc. v. Altai, Inc., supra,* 982 F.2d at 716; *Data General Corporation v. Grumman Systems Support Corporation, supra,* 795 F.Supp. at 505; *Quincy Cablesystems, Inc. v. Sully's Bar, Inc., supra,* 650 F.Supp. at 849. The "extra element" necessary to prove the state law claim must be such as to render that claim "qualitatively different" from a copyright claim in order to avoid preemption. *Harper & Row, Publishers, Inc. v. Nation Enterprises, supra,* 723 F.2d at 201; *Computer Associates International, Inc. v. Altai, Inc., supra,* 982 F.2d at 716. In other words, "[a]n action will not be saved from preemption by elements such as awareness or intent, which alter 'the action's scope but not its nature . . .'" *Computer Associates International, Inc. v. Altai, Inc., supra,* 982 F.2d at 717 (citation omitted). The issue is whether the nature of the state-created right is so qualitatively similar to the rights protected by the Copyright Act as to be deemed equivalent and, consequently, preempted. *Data General Corporation v. Grumman Systems Support Corporation, supra,* 795 F.Supp. at 505.

■ In applying the section 301 preemption provision, courts focus not upon the label affixed to the state cause of action, but rather upon " 'what plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced.' " *Computer Associates International, Inc. v. Altai, Inc., supra,* 982 F.2d at 716 (citation omitted). For example, in the *Quincy Cablesystems* case, a cable program provider, NESN, alleged that the defendants' unauthorized reception of its satellite signals and subsequent presentation of NESN programs to their patrons constituted conversion. The Court concluded that the rights NESN sought to protect by virtue of its state law claim, i.e., the rights of distribution, performance and display, fell squarely within the rights protected by section 106 of the Copyright Act. Because the state and federal rights were equivalent, the conversion claim was preempted. *Quincy Cablesystems, Inc. v. Sully's Bar, Inc., supra,* 650 F.Supp. at 848–850; *see also Harper & Row Publishers, Inc. v. Nation Enterprises, supra,* 723 F.2d at 199–201.

A conversion claim was also asserted in the *Data General* case. However, in that situation, Data General alleged that the defendant physically took possession and retained copies of copyrighted software owned by the plaintiff. Although the defendant argued that Data General's true complaint was that it had copied and used the software, the Court concluded that Data General had stated a viable conversion claim for the wrongful possession of physical property that was not preempted by section 301. *Data General Corporation v. Grumman Systems Support Corporation, supra,* 795 F.Supp. at 505–506.

Similarly, courts have determined that state law causes of action premised on theories such as misappropriation or unfair competition wherein the allegations are concerned solely with the copying or replication of protected works of authorship are preempted. *See, e.g., Computer Associates International, Inc. v. Altai, Inc., supra,* 982 F.2d at 717; *Durham Industries, Inc. v. Tomy Corporation,* 630 F.2d 905, 918–919 (2 Cir., 1980); *Data General Corporation v. Grumman Systems Support Corporation, supra,* 795 F.Supp. at 506; *Peckarsky v. American Broadcasting Co., Inc.,* 603 F.Supp. 688, 695–696 (D.D.C., 1984); *Schuchart & Associates v. Solo Serve Corporation,* 540 F.Supp. 928, 943–945 (W.D.Tex., 1982). However, when an "extra element" qualitatively differentiates the nature of the state-created interest sought to be protected, the claim is not abrogated by section 301. *See, e.g., National Car Rental System, Inc. v. Computer Associates International, Inc.,* 991 F.2d 426, 430–434 (8 Cir., 1993); *Computer Associates International, Inc. v. Altai, Inc., supra,* 982 F.2d at 717–719; *Data General Corporation v. Grumman Systems Support Corporation, supra,* 795 F.Supp. at 506–507; *Intown Enterprises, Inc. v. Barnes,* 721

F.Supp. 1263, 1267 (N.D.Ga., 1989); *Stillman v. Leo Burnett Company, Inc.*, 720 F.Supp. 1353, 1361–1363 (N.D.Ill., 1989); *Nash v. CBS, Inc.*, 704 F.Supp. 823, 832–833 (N.D.Ill., 1989); *Schuchart & Associates v. Solo Serve Corporation*, *supra*, 540 F.Supp. at 945.

Massachusetts General Laws Chapter 93A prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." M.G.L.A. ch. 93A § 2. There is caselaw to support the proposition that not every copyright infringement establishes a violation of Chapter 93A. In *Williams v. Arndt*, 626 F.Supp. 571 (D.Mass.1985), following a non-jury trial, the Court concluded that the individual defendant and his company had infringed the plaintiff's copyright and awarded damages for that infringement. *Id.* at 582. However, the Court further found that the defendants' actions did not rise to the level of "the type of unscrupulous, intolerable and unethical behavior proscribed by c. 93A", and thus entered judgment for the defendants on the state law claim. *Id.* (citation omitted). As is clear from the previous discussion, however, the instant case must be decided on the basis of the nature of the rights that Kennedy & Co. seeks to protect by virtue of its Chapter 93A claim.

■ To the extent that Kennedy & Co. contends that "subsequent use of the Logo by [the defendants] ... constitutes an unfair or deceptive practice" in violation of Chapter 93A (Complaint # 1, ¶ 16), the plaintiff's claim is preempted. It is apparent that the right Kennedy & Co. seeks to enforce pursuant to the state statute, i.e., the right to reproduce the copyrighted work, is equivalent to the right protected by 17 U.S.C. § 106(1).

■ The plaintiff's Chapter 93A claim is not limited to a mere charge of use or copying of the logo, however. Kennedy & Co. also alleges that the defendants' acquisition of the logo was accomplished by unfair or deceptive means. The allegations of the complaint and the evidence at trial reflect that, following several attempts to secure the return of the subject artwork, Kennedy & Co. sent the defendants an invoice for services rendered in preparing the logo. In response, the defendants' executive vice-president wrote a letter stating:

> ... the copy [of the logo] that you sent me is *identical* to the one we designed and showed you. All you did, without being asked to, was have your graphics people thicken the horizontal lines on our sketch ... Now, ironically, you use *my* logo, make one poor quality copy and claim its (sic) yours and want $5,000.00.

Complaint # 1, Exh. C, emphasis on original.

The plaintiff argues that the defendants' conduct in disputing the origination of the artwork and thus acquiring the logo without payment for services rendered was unfair and deceptive.

In order to prevail on this claim, Kennedy & Co. must prove an extra element, something more than, and indeed different from, copyright infringement. The defendants' conduct must be demonstrated to have "[a]ttained a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App. 498, 396 N.E.2d 149, 153 (1979). The nature of this claim qualitatively differs from the copyright claim. The right sought to be enforced is not equivalent to the rights secured and protected by the Copyright Act. Consequently, in light of these circumstances, the second aspect of Kennedy & Co.'s Chapter 93A claim is not preempted by section 301 of Title 17.

### *Order*

Accordingly, it is ORDERED that that portion of the 93A claim which seeks to impose liability under Chapter 93A based on the "subsequent use" of the logo as alleged in paragraph 16 of the Complaint (# 1) be, and the same hereby is, DISMISSED on the basis of preemption. That portion of the Chapter 93A claim set forth in paragraph 16 which seeks to impose liability on the basis of the "acquisition ... of the logo as described [in the preceding paragraphs of the Com-

plaint] constitute[s] an unfair or deceptive practice" is not preempted.[1]

Accordingly, counsel shall report for a conference on *Monday, July 12, 1993 at 4:15 P.M.* to set a date for the filing of proposed findings of fact and conclusions of law and a date for final arguments. Plaintiff's Motion to Reopen Evidence and to File Deposition (# 38) will be heard at the conference.

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR RECONSIDERATION (# 44) AND PLAINTIFF'S CROSS MOTION FOR RECONSIDERATION (# 47)

### I. INTRODUCTION

In a Memorandum and Order (# 43) dated July 1, 1993, the Court determined that the portion of plaintiff Patricia Kennedy & Company, Inc.'s (hereinafter "Kennedy & Co.") claim under Massachusetts General Laws Chapter 93A which sought to impose liability on the defendants Zam–Cul Enterprises, Inc. and Ambulance Systems of America, Inc. (hereinafter collectively "ASA") for the subsequent use of a logo created by the plaintiff was preempted by the federal Copyright Act, 17 U.S.C. § 301. *Patricia Kennedy & Company, Inc. v. Zam–Cul Enterprises, Inc.*, 830 F.Supp. 53, 57–58 (D.Mass., 1993). The Court further found that the portion of the plaintiff's Chapter 93A claim which was based upon the defendants' acquisition of the logo as described in the complaint was qualitatively different from a copyright claim and,

consequently, not preempted. *Id.* Kennedy & Co. and ASA have taken exception to the Court's ruling; the defendants and the plaintiff respectively have filed motions for reconsideration (## 44, 47) as well as oppositions to each other's motions (##4 6, 48). Oral argument on these two motions was entertained on August 3, 1993.

### II. DISCUSSION

#### A. The Defendants' Motion

The defendants contend that the Court's decision of July 1st was erroneous only to the extent that the acquisition part of the Chapter 93A claim was found not to be preempted. It is argued that the undisputed evidence at trial was that Kennedy & Co. presented the subject logo to the defendants during the course of their contractual relationship when the plaintiff was providing media and advertising services to ASA. It was only after ASA had acquired the logo, in response to a Kennedy & Co. bill for services rendered, that Mr. Lovett claimed to have authored the logo himself. According to the defendants, absent any allegation that the defendants came into possession of the logo by means of fraud or misappropriation,

> [h]owever untrue or deceptive Mr. Lovett's initial claim to having authored the logo may have been ... [t]he only relevance of Mr. Lovett's claim ... was the question of Kennedy & Company's *copyright* interest in the logo. In other words,

---

1. There can be no question but that the issue of who created the logo was an issue in the case. In their Amended Answer (# 21), the fourth affirmative defense reads:

    The defendants state that if the plaintiff ever presented the defendants with "artwork" or a prototype for a logo, that it was merely an embellishment of the defendants' ideas and designs and therefore, if said ideas were owned by anyone, they were owned by the defendants and not by the plaintiff.

    In their Pre-Trial Memorandum (# 22), under the listing of "Contested Issues," defendants state:

    It is disputed whether, as the defendants assert, the executive vice president of the defendants, Mr. Lovett ever showed, delivered or otherwise made the plaintiff aware of any logo sketches or ideas that he had with regard to a logo development. The plaintiff asserts that no such disclosure were [sic] ever made.

    In the Pretrial Order (# 12), Judge Zobel, the judicial officer to whom the case was then assigned, indicated that the first issue to be tried was "[w]hether plaintiff created the "ASA" logo."

    In these circumstances, the phrase "acquisition" as used in paragraph 16 of the Complaint (# 1) encompasses more than the manner in which the defendants first obtained physical possession of the logo but also subsequent dealings between the parties respecting the defendants' right to retain it under the contract between the parties, which would include defendants' assertion during the parties' dealings that they created the logo. Whether defendants' action rises to the level of a Chapter 93A violation is another question, but there can be no argument that this asserted basis for Chapter 93A liability was not an issue at trial.

Mr. Lovett's claimed authorship of the ASA logo was of no relevance to any alleged wrongdoing by [ASA]—except, perhaps, to its degree of awareness or culpability in infringing plaintiff's copyright.

Defendants' Motion for Reconsideration # 44 at pp. 2–3 (emphasis in original; citation and footnote omitted).

The defendants take too narrow a view of both the plaintiff's claim and the law of the Commonwealth.

First, considering the allegations of the complaint as a whole, the Court construed the term "acquisition" broadly to

... encompass( ) more than the manner in which the defendants first obtained physical possession of the logo but also subsequent dealings between the parties respecting the defendants' right to retain it under the contract between the parties, which would include defendants' assertion during the parties' dealings that they created the logo.

*Patricia Kennedy & Company, Inc. v. Zam-Cul Enterprises, Inc., supra,* 830 F.Supp. at 58, footnote 1.

Given this construction of the plaintiff's claim, ASA's argument that Mr. Lovett's false representation was irrelevant because it was made after the defendants gained possession of the logo misses the mark.

■ Second, the defendants seem to imply that in order to state a claim under Chapter 93A, a separate, independent tort such as fraud or misappropriation must be alleged and proven. This is not the law in Massachusetts. The Supreme Judicial Court

... has underscored the broad impact of c. 93A as creating "new substantive rights" and providing relief which is "in addition to, and not an alternative to, traditional tort remedies." *Linthicum v. Archambault,* 379 Mass. 381, 383, 398 N.E.2d 482 (1979), and cases cited. Consequently, while it is clear that common law actions for fraud and deceit are within the contemplation of an "unfair act" under the statute, it is equally well established that the definition of the term under c. 93A goes far beyond the scope of these common law actions. *See Slaney v. Westwood Auto,*

*Inc.,* 366 Mass. 688, 703, 322 N.E.2d 768 (1975).

*Datacomm Interface, Inc. v. Computerworld, Inc.,* 396 Mass. 760, 778, 489 N.E.2d 185, 197 (1986); *see also, Veranda Beach Club Limited Partnership v. Western Surety Co.,* 936 F.2d 1364, 1385–6 (1 Cir., 1991).

Thus, a claim under Chapter 93A rises or falls on its own merit.

■ Third, under Massachusetts law

... the litmus test for transgression of Chapter 93A involves behavior which falls within 'the penumbra of some ... established concept of unfairness,' and is sufficiently 'unethical or unscrupulous' to be actionable under the statute.

*Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 516 (1 Cir., 1988) *quoting PMP Associates, Inc. v. Globe Newspaper Co.,* 366 Mass. 593, 596, 321 N.E.2d 915, 917 (1975).

The allegations of the plaintiff's complaint meet this standard.

■ According to the complaint and the evidence at trial, Kennedy & Co. made numerous demands upon the defendants for the return of the logo artwork. When ASA did not respond, an invoice for the preparation of the logo was sent which prompted Mr. Lovett's response letter incorporating the false authorship claim. (Complaint # 1, ¶¶ 8, 10). The defendants' protestations notwithstanding, these allegations set forth the elements of a conversion claim.

■ Under Massachusetts law, to state a claim for conversion, it must be alleged that

... (1) defendant wrongfully exercises control, dominion or ownership over personal tangible property; (2) plaintiff has an ownership or possessory right in the property interfered with at the time of the defendant's wrongful act; (3) defendant's wrongful act damages plaintiff; and (4) demand and refusal, where defendant's possession is not wrongful in its inception.

*Evergreen Marine Corporation v. Six Consignments of Frozen Scallops,* 806 F.Supp. 291, 296 (D.Mass., 1992) (citations omitted); *see also, In re Halmar Distributors, Inc.,* 968 F.2d 121, 129–130 (1 Cir., 1992).

In the instant case, the defendants' basis for refusing to return the logo artwork was not a mere dispute over the extent of Kennedy & Co.'s contractual obligations. Rather, an affirmative false statement contesting the plaintiff's ownership or possessory right in the property was interposed. Indeed, Mr. Lovett's purported authorship of the logo artwork continued to be asserted up to the time of trial in this case. Clearly, the defendants' conduct as alleged by the plaintiff "falls within 'the penumbra of some ... established concept of unfairness.'"

The defendants' final argument is that the acquisition portion of Kennedy & Co.'s Chapter 93A claim is identical to the unfair competition claim in the case of *Data General Corporation v. Grumman Systems Support Corporation*, 795 F.Supp. 501 (D.Mass., 1992) and, like that claim, should be preempted. In *Data General*, the unfair competition claim that was determined to be the equivalent of the copyright infringement claim was "a claim that (the defendant) unfairly competed by misappropriating (the plaintiff's) protected software." *Id.* at 506. As has been described hereinabove, Kennedy & Co.'s claim quite simply is of a different nature.

To summarize, the Court is not persuaded by the defendants' arguments that the prior decision with respect to Kennedy & Co.'s Chapter 93A claim was in error. Therefore, the defendants' motion for reconsideration will be denied.

### B. The Plaintiff's Cross Motion

By its motion, Kennedy & Co. seeks to have the Court reconsider the conclusion that the portion of the Chapter 93A claim based upon "subsequent use" of the logo is preempted by the Copyright Act. Essentially the plaintiff argues that the defendants' entire "integrated course of conduct" including both the acquisition/retention and the subsequent use/copying constitutes unfair or deceptive practices and should be actionable under Chapter 93A.

The fact that Kennedy & Co. has alleged a viable Chapter 93A claim based upon certain conduct in which the defendants engaged during their relationship does not mean, *a fortiori*, that the entire range of the defendants' activities form the predicate for liability. By means of the allegations that the subsequent use of the logo constitutes an unfair or deceptive practice, the plaintiff seeks to assert and protect a right that is equivalent to the exclusive right provided in section 106(1) of the Copyright Act, 17 U.S.C. § 106(1). As such, the claim is preempted under 17 U.S.C. § 301(a).

The plaintiff's cross motion for reconsideration (# 47) shall be denied.

### III. ORDER

For the foregoing reasons, it is ORDERED that Defendants' Motion for Reconsideration (# 44) and Plaintiff's Cross Motion for Reconsideration (# 47) be, and the same hereby are, DENIED.