The YANKEE CANDLE
COMPANY, INC.

v.

The BRIDGEWATER CANDLE
COMPANY, LLC.

No. 98–30226–MAP.

United States District Court,
D. Massachusetts.

July 27, 2000.

Mary R. Bonzagni, Law Offices of Donald S. Holland, Longmeadow, MA, Donald S. Holland, Holland & Bonzagni, P.C., Longmeadow, MA, Gregory L. Baker, Howrey Simon Arnold & White, Washington, DC, Colin Foley, Howrey Simon Arnold & White, Washington, DC, Cecil E. Key, Jr., Baker Botts, L.L.P., The Warner, Washington, DC, for Yankee Candle Company, plaintiff.

Bruce R. Parker, Katherine M. Hamill, Foley, Hoag & Eliot, Boston, MA, Jeffrey M. Karmilovich, Richard M. Moose, Dority & Manning, Greenville, SC, Michael A. Albert, Wolf, Greenfield & Sacks, Boston, MA, for Bridgewater Candle Company, LLC, defendant.

Kathleen A. Linert, Morrison, Mahoney & Miller, Boston, MA, for R.E.P.S., movant.

*MEMORANDUM REGARDING DEFENDANT'S MOTION TO DEFINE SCOPE OF TRIAL AND PLAINTIFF'S MOTION FOR ENTRY OF JUDGMENT PURSUANT TO RULE 54(b) OR FOR CERTIFICATION PURSUANT TO 28 U.S.C. § 1292(b)*

PONSOR, District Judge.

## I. BACKGROUND

The parties are both candle makers. Yankee Candle alleges that Bridgewater Candle has misappropriated its intellectual property, mainly by infringing its copyrights and unfairly exploiting its trade dress. The court has recently allowed, in part, Bridgewater's motion for summary judgment. Resolution of the motions now at issue will define the next phase of the litigation. Before addressing these motions directly, some description of the course of the case to date is necessary.

This complaint asserts five counts, each offering a distinct theory: statutory copyright, statutory trade dress, common law trade dress, common law tortious interference with contractual relations and statutory unfair trade practices pursuant to Mass.Gen.Laws ch. 93A.

On June 8, 2000 the court allowed the defendant's Motion for Summary Judg-

ment on the first three counts. In brief, the reasons were as follows.

With regard to the copyright claim in Count I, the court concluded preliminarily that the design elements identified by the plaintiff were mainly not protectable. As to those elements that might, perhaps, be protectable, plaintiff's claims failed the "ordinary observer" test—*i.e.*, no reasonable person could conclude the elements were copied by Bridgewater. Since plaintiff's copyright claims were without legal or factual support, and no jury could conclude otherwise, summary action was appropriate.

The Supreme Court's recent decision in *Wal–Mart Stores, Inc. v. Samara Brothers, Inc.*, 529 U.S. 205, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000), crushed most, if not all, of the life out of plaintiff's statutory trade dress claim in Count II. *Wal–Mart* drew a crisp distinction between "product design" and "product packaging" claims in trade dress cases. Lawsuits within the product packaging category enjoy a more generous scope of possible proof; a plaintiff may prevail by showing either "inherent distinctiveness" or secondary meaning. In contrast, a plaintiff whose trade dress claim resides within the product design pigeon hole must rely exclusively on secondary meaning. Because of the more expansive evidentiary environment in a product packaging claim, a litigant relying on this theory must assert trade dress features that serve to identify the product's source, such as a name or unique label. In underlining the importance of this requirement Justice Scalia offered an explicit caveat:

> To the extent there are close cases, we believe that courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning.

*Id.* at 1346.

Here, Yankee Candle's trade dress claims—focusing on the "look and feel" of its Housewarmer line, its vertical display system and its catalogue layout—do not

present even a "close case." They are clearly (plaintiff's protestations to the contrary notwithstanding) in the "package design" category. As set down by *Wal–Mart,* therefore, the plaintiff's trade dress is protectable only to the extent that it has acquired secondary meaning; no claim of "inherent distinctiveness" is viable.

A close examination of the record in this case confirms the complete absence of any significant evidence that would support a finding of secondary meaning. The trade dress sought to be protected has not been in circulation for a sufficient period of time to support secondary meaning as a matter of law, and plaintiff's advertising makes no use of the trade dress elements for product identification, as in the case of a label or name.

The Supreme Court's unanimous decision in *Wal–Mart* emphatically underscores the importance of an exacting analysis of trade dress claims and spells out the evils that flow from overprotection of product design.

> Consumers should not be deprived of the benefits of competition with regard to the utilitarian and esthetic purposes that product design ordinarily serves by a rule of law that facilitates plausible threats of suit against new entrants based upon alleged inherent distinctiveness.

*Id.* at 1344.

The glaring absence of legal or factual support for Yankee Candle's copyright and trade dress claims raises precisely the concerns highlighted in this passage. As Justice Scalia suggests, the danger of this kind of litigation is that its effect, and perhaps even its goal, will not be legitimate protection of creative effort, but rather suppression of fair competition. In view of Wal–Mart, the deficiencies in the record made allowance of defendant's motion for summary judgment on the statutory trade dress claim inevitable.

Having allowed summary judgment on the statutory copyright and trade dress claims in Counts I and II, and with no argument that the common law trade dress count should be treated differently, the court also allowed the defendant's motion with regard to Count III.

The remaining two counts were addressed briefly. The court found record support for the claim, specified in the complaint, that Bridgewater sales agents had made certain misrepresentations to Yankee customers and that Yankee had suffered damage as a result. This, the court found, was sufficient to justify denial of the defendant's motion on Count IV, the claim for tortious interference with contractual relations.

Count V, for violation of Ch. 93A, was also found to be viable, based on the specific acts of misrepresentation alleged in Count IV, which were supported, to some extent, by the record. The court made it clear, however that "the allowance of the motions for summary judgment on the copyright and Lanham Act claims disposes of those theories to the extent that plaintiff might otherwise offer those underlying facts as support for the Ch. 93(A) claim." Memorandum at 43.[1]

With three of the five counts disposed of, the question becomes, where does the case go from here? Bridgewater's Motion to Define the Scope of Trial, and Yankee's Motion for Entry of Final Judgment offer strongly contrasting views of the next stage.

## II. DISCUSSION

### A. Defendant's Motion to Define the Scope of Trial

The essence of Bridgewater's argument in support of this motion is that the issues raised by the remaining two counts, and the concomitant scope of the evidence at the upcoming trial, are relatively narrow. Allowance of its motion would confirm this and shape the proceedings appropriately. Bridgewater seeks a short, prompt trial.

Yankee Candle takes the position that the rulings on the motion for summary judgment have not significantly compressed the issues or the evidence at the trial to come. In other words, in Yankee's view, most, if not all, of the documents and testimony that would have been offered at the trial of all five counts must still be presented at the trial of the tortious interference and Ch. 93A counts. As will be seen below, Yankee argues from this that the most efficient, and the fairest, path for the case at its present juncture is towards the Court of Appeals. By holding off trial on the remaining two counts, and permitting interlocutory review by the First Circuit of the summary judgment rulings, Yankee says, the worst-case possibility of a lengthy trial on Counts IV and V now, and an equally lengthy trial of Counts I through III on remand (each with virtually the same evidence) will be avoided.

An examination of the complaint, and an analysis of the effect of the summary judgment rulings, makes it clear that Bridgewater has the stronger argument.[2]

The court denied defendant's motion for summary judgment on Count IV after recognizing a narrowly defined area of factual dispute supported in the record. The complaint charges that Bridgewater tortiously interfered with Yankee's contractual relations in four specific ways. Bridgewater's sales agents (1) disseminated "false

---

1. As will be seen below, the previous denial of summary judgment on Count V—based on a finding that Bridgewater failed to demonstrate from the undisputed facts that the actionable behavior, if it occurred, took place "primarily and substantially" outside the Commonwealth—has been reconsidered. Bridgewater's motion for summary judgment on Count V, relying on this argument, will now be allowed.

2. For the reasons stated below, Yankee's preferred course is also barred by the fact that an immediate appeal is supported by neither rule nor statute, and would fly in the face of emphatic First Circuit precedent.

and misleading information regarding Yankee Candle;" (2) "disparaged" plaintiff's products; (3) contacted plaintiff's customers "for the purpose of informing them that Yankee could or would no longer service their needs;" and (4) directly solicited business from Yankee's customers. Verified Complaint at 22, para. 110. Because the court found that there was sufficient, though minimal, evidence in the record to support these specific claims, Bridgewater's motion on this count was denied.

Yankee contends that a narrow construction of Count IV is improper, for at least two reasons. First, Count IV, at para. 108, incorporates all the allegations of the previous 107 paragraphs into the claim for tortious interference, and para. 110 states that the interference consisted of "at least" the four specified actions. To a careful reader, these two details would supposedly suggest that, in fact, Yankee intended to offer all the evidence supporting the copyright and trade dress count as a basis for the claim of tortious interference with contractual relations.

The court cannot agree. If the plaintiff really intended the evidence supporting the copyright and trade dress claims to be, so to speak, the "dog" animating the tortious interference claim, and the actual misrepresentations spelled out so explicitly to be merely the "tail," then it had an obligation, as a matter of pleading, to make this point clearer.

Alternatively, assuming the point was not adequately conveyed in the complaint itself, Yankee argues that the discovery provided made it plain beyond any possible confusion that the copyright and trade dress infringements were at the heart of its tortious interference claim. Whatever the deficiencies in the pleadings, Bridgewater knew or should have known that Bridgewater's efforts to simulate Yankee's labels and trade dress were part and parcel of its effort to interfere with Yankee's contractual relations, in combination with the misrepresentations of its sales agents.

Moreover, Yankee claims, even if Bridgewater's attempts to copy its labels and trade dress were not, in substance, at the heart of plaintiff's claim for tortious interference, this misconduct may properly be presented at the trial as evidentiary support on the element of improper motive, which is one of the common law components of a tortious interference claim.

■ This argument is ingenious but unsound. Assuming the court is incorrect in noting the pleading deficiency, or assuming the deficiency were mended by the discovery disclosures, the court's ruling on the motion for summary judgment—anchored on the conclusion that the record lacks sufficient evidence to justify a factfinder in concluding that a copyright or trade dress infringement could be shown—effectively blocks the wholesale importation of the copyright and trade dress evidence into the trial of Count IV. There are several reasons for this.

First, to a considerable extent, the federal copyright statute preempts any state common law claim raising the same essential contentions. See Data General Corp. v. Grumman Systems Support Corp., 795 F.Supp. 501, 505 (D.Mass.1992). In other words, Yankee Candle cannot simply reconfigure its legally unsupported copyright claims and present them, whole hog, in the form of a common law action for tortious interference with contractual relations.

The Copyright Act establishes a two-part test for the preemption of state statutory or common law claims. First, "the work of authorship in which rights are claimed must fall within the 'subject matter of copyright' as defined in [the Act]." Patricia Kennedy & Co., Inc. v. Zam–Cul Enterprises, Inc., 830 F.Supp. 53, 56 (D.Mass.1993). There is no dispute here that the Yankee labels are part of the "work of authorship in which rights are claimed" and that these labels fall squarely within the subject matter of the copyright as defined by federal law.

The second consideration in the preemption analysis is whether the state law asserted creates "legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright...." *Id.* In assessing whether the rights are equivalent, courts should focus on "what plaintiff seeks to protect ..." *Id.* Thus, state law claims concerned with the copying of a protected work are preempted, but those claims that involve an "extra element" that differentiates what the plaintiff seeks to protect from matters within the scope of the copyright law, are not preempted. *See id.* Here, insofar as Yankee's tortious interference claim involves copying itself as evidence of, for example, "sharp practices" on the part of Bridgewater, that portion of the claim is preempted. The claim escapes preemption only to the extent that Yankee seeks to offer evidence of some *conduct* of Bridgewater employees other than copying itself. Thus, copyright preemption would, in any event, limit evidence on the tortious interference claim to Bridgewater's independent conduct, if any, and would bar evidence of alleged copying or reproduction. *See id.* at 57 (separating claim into defendant's alleged use, and defendant's conduct, and finding part of claim concerning use preempted by Copyright Act).

The Lanham Act, in contrast to the copyright statute, does not directly preempt a parallel common law cause of action where facts exist to support it. This hypothetical possibility of parallel statutory and common law causes of action is insufficient, however, to transport the plaintiff's claims over the factual void presented by the actual record in this case. The court has found that the facts as developed in discovery simply cannot support Yankee Candle's copyright and trade dress claims. In this context at least, non-actionable conduct does not become actionable merely because of a change in label. Just as Bridgewater's development of its trade dress does not form a basis for any claim under the Lanham Act, it similarly does not form a basis for any claim of tortious interference. *See Pathe Computer Control Systems Corp. v. Abbey Holding, Inc.,* 1990 WL 122345 (D.Mass.1990) (stating, "improper means" in business tort law are means which are contrary to law). If the copyright and trade dress claims are insupportable, on this record, then Yankee cannot protract their existence through a common law claim for tortious interference. In short, evidence of the discarded copyright and trade dress violations cannot form the basis for the claim for tortious interference and will not be permitted in the trial on Count IV substantively.

Similarly, this evidentiary material would at best be cumulative on the issue of improper motive, one of the elements of the tortious interference claim. The essence of Count IV is that Bridgewater representatives lied to Yankee's customers, with the goal of turning them into Bridgewater customers or at least damaging Yankee. It is certainly not necessary to point to evidence of sharp practices in other areas—such as misappropriation of copyrighted material and trade dress—to demonstrate that outright, malicious lies, if they were spoken, must have been uttered with improper motive.

In conclusion, the only relevant or necessary evidence remaining to be heard on the tortious interference claim in Count IV will be the limited, discrete testimony and documents related to the claims of misrepresentation asserted by Yankee against Bridgewater—specifically the statements in which Bridgewater representatives are charged with making misrepresentations to Yankee's customers in Count IV, at para. 110 of the complaint. Defendant's Motion to Limit the Scope of Trial will therefore be ALLOWED, to this extent. The motion is hereby DENIED without prejudice, however, with regard to defendant's attempt to limit the specific witnesses who may be offered at the trial on Count IV, providing that their testimony falls within the framework described above. A schedule will issue setting a date

for both sides to submit a list of witnesses and exhibits to be presented at trial.

B. *Reconsideration of Motion for Summary Judgment on Count V.*

 As noted above, the court has reconsidered its previous ruling denying defendant's Motion for Summary Judgment on the Chapter 93A claim. Upon review, the undisputed facts of record support Bridgewater's defense that the actionable behavior here was *not* committed "primarily and substantially" in the Commonwealth. No reasonable factfinder—here, this judge—could conclude otherwise.

The burden is on the defendant, Bridgewater, to show that its alleged misconduct occurred primarily and substantially outside Massachusetts. *See Roche v. Royal Bank of Canada,* 109 F.3d 820, 829 (1st Cir.1997). Whether Bridgewater has satisfied its burden on this point is a question of law for the court. *See id.* The First Circuit considers three factors in assessing whether the alleged behavior has occurred substantially and primarily within Massachusetts: "1) where defendant committed the deception; 2) where plaintiff was deceived and acted upon the deception; and 3) the situs of plaintiff's losses due to the deception." *Clinton Hosp. Ass'n v. Corson Group, Inc.,* 907 F.2d 1260, 1265–66 (1st Cir.1990). Applying the *Clinton* factors to this case, it is now clear upon reconsideration that the actionable conduct indisputably occurred primarily and substantially outside Massachusetts.

Count V, properly viewed, alleges only a few specific instances of Bridgewater's misconduct, none of which occurred in Massachusetts. Even if the 93A count were construed to include defendant's alleged attempts to duplicate Yankee's labels and trade dress, these acts, as well, indisputably occurred outside the Commonwealth, since Bridgewater's principal place of business is not in Massachusetts. Thus, the first *Clinton* factor weighs in favor of the defendant.[3]

The second *Clinton* factor requires an analysis of "where the plaintiff received and acted upon the deceptive or unfair acts or practices." *Roche,* 109 F.3d at 829. Application of this factor generally involves determining where the named plaintiff was when it was deceived by the named defendant. The facts here, however, do not fit neatly within the typical formulation of this criterion. Yankee does not allege that it was itself the immediate recipient of Bridgewater's misrepresentations. Rather, one or more third parties, Yankee customers, allegedly received the deception.

Though the facts of this case do not lend themselves to a simple application of the second *Clinton* factor, the First Circuit does provide some guidance. The second *Clinton* factor has also been characterized as " 'the locus of the recipient of the deception at the time of the reliance.' Under varying circumstances, this may or may not be the same place as the place where the plaintiff received the deception." *Id.* at 830, quoting *Clinton,* 907 F.2d at 1265–66 (internal citations omitted).

The vast majority of the recipients of the deception charged in the complaint, *i.e.,* the Yankee customers, were undeniably outside Massachusetts when they were targeted for Bridgewater's alleged misconduct. Thus, the fairest interpretation of the second *Clinton* factor weighs in favor of Bridgewater. Accepting Yankee's allegations as true, the record supports only one conclusion: the deception in this case was conceived and concocted outside Massachusetts and visited, overwhelmingly, upon persons and entities outside the Commonwealth.

The third factor, location of the loss, weighs in favor of the plaintiff, since whatever financial loss occurred was undoubt-

---

3. The First Circuit has held that this first factor is the least weighty of the three factors.

*See Roche,* 109 F.3d. at 829.

edly felt most acutely at Yankee's headquarters in Massachusetts. When the place of injury, however, "is the only factor weighing in favor of a claimant, the admonition of Massachusetts courts that liability under chapter 93A is not to be imposed lightly is particularly relevant." *See id.* at 831 quoting *Central Mass. Television, Inc. v. Amplicon, Inc.,* 930 F.Supp. 16, 27 (D.Mass.1996).

A careful balancing of the *Clinton* factors reveals that, on the undisputed facts of record, two of the three factors weigh in favor of the defendant. Therefore, taking into account the general policy of Ch. 93A to protect only those deceptions that occur within the Commonwealth, the court finds the defendant has met its burden of proving that the alleged deception occurred primarily and substantially outside Massachusetts. The motion for summary judgment on Count V, upon reconsideration, is therefore hereby ALLOWED.

C. *Defendant's Motion For Entry of Final Judgment or For Certification*

 No honest view of this case permits the court to transmit a portion of the issues now ruled upon to the Court of Appeals, either under Fed.R.Civ.P. 54(b) or under 28 U.S.C. § 1292(b).

Rule 54(b), as the Court of Appeals has repeatedly stated, may only be used when the facts and law crisply isolate one set of claims and when "there is no just reason for delay" in the entry of judgment. *See Clair International Inc. v. Mercedes–Benz of North America, Inc.,* 124 F.3d 314, 318 (1st Cir.1997); *Credit Francais International S.A. v. Bio–Vita Ltd.,* 78 F.3d 698, 706 (1st Cir.1996); *Spiegel v. Trustees of Tufts College,* 843 F.2d 38, 43 (1st Cir. 1988).

Here, of course, Yankee Candle has argued vigorously that there is an almost entire *blending* of the facts and law as between Counts I through III, which would proceed to the Court of Appeals, and Count IV, which would stay below for trial. It argues from this that, because a lengthy trial will be required even on Count IV alone, immediate appeal of the rulings on Counts I through III should be permitted to avoid the possibility of *two* protracted proceedings. If Yankee Candle is correct in its argument, Rule 54(b) does not exist as a basis for entry of separate judgment.

This court has, for the reasons set forth above, however, rejected Yankee Candle's argument and concluded that, indeed, the facts animating Count IV are entirely separate from those forming the basis of the claims in Counts I through III. Nevertheless, this conclusion does not warrant invocation of Rule 54(b) because, in fact, "just reason for delay" *does* exist. The reason is that a brief and tightly focused trial on the sole remaining claim in Count IV would permit the court to enter a judgment with regard to *all* claims and thereby allow the Court of Appeals to consider this case in one review. Moreover, even if the court were to make the certification under Rule 54, it would not be inclined to stay the trial on the remaining, discrete count, in any event. Trial on Count IV would, as a practical matter, be over long before any proceedings on appeal were completed.

Twenty-eight U.S.C. § 1292(b) provides an even more dubious ground for immediate appeal. This statute permits a district judge to issue an order invoking the discretionary jurisdiction of the Court of Appeals when he or she is "of the opinion that [a previous] order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation . . . ."

The questions addressed in the ruling on the motion for summary judgment involved no more than application of wellestablished law, recently clarified by a unanimous Supreme Court opinion. Though a mistake is always possible, nothing in the rulings makes them especially

debatable. If the court found, in these circumstances, "a controlling question of law as to which there was substantial ground for difference of opinion," then the vast majority of partial summary judgment rulings would necessarily be subject to immediate appellate review. This abuse of the § 1292(b) mechanism would needlessly complicate litigation and unfairly burden the Court of Appeals.

For these reasons, the defendant's motion is hereby DENIED.

### III. CONCLUSION

Trial on Count IV will commence on September 18, 2000 at 10 a.m. Counsel will appear on that day at 9:30 a.m. for a brief conference prior to jury selection. The court has set aside one week, assuming a trial schedule of 10:00 a.m. to 1:00 p.m., and 2:00 p.m. to 4:00 p.m., to complete this jury trial.

On or before August 25, 2000, counsel will submit a memorandum listing the names of witnesses to be presented, the subject matter of their testimony, an estimate of the time required for direct examination, and an indication of whether the witness will appear live or via deposition. A list of exhibits will be included in the memorandum. Also, by August 25 counsel will submit any further motions *in limine,* proposed *voir dire* questions and proposed jury instructions.[4]

Rulings on defendant's motion to strike jury demand, motion to preclude plaintiff from offering evidence of damages, and motion to exclude hearsay material will issue shortly.

A separate order will issue.

---

4. Alternatively, counsel may wish to consider a voluntary dismissal without prejudice of Count IV (as narrowly construed by the court) to permit an immediate appeal both of the summary judgment rulings on Counts I through III and V, and of the court's ruling on the proper scope of Count IV. To the extent that the appeal is successful, Count IV might be resurrected. If the appeal is unsuccessful, the dismissal of Count IV would of course be permanent.