**Samuel Bartley STEELE, Bart Steele Publishing and Steele Recordz, Plaintiffs,**

v.

**TURNER BROADCASTING SYSTEM, INC., Time Warner Corporation, Jon Bongiovi (individually and d/b/a Bon Jovi Publishing), Richard Sambora (individually and d/b/a Aggressive Music), William Falcone (individually**

and d/b/a Pretty Blue Songs), Fox Broadcasting Company, Major League Baseball Properties, A & E Television Networks, AEG Live, Mark Shimmel Music, Vector 2 LLC, Universal Music Publishing, Universal Polygram International Publishing, Sony ATV Tunes, Boston Red Sox and Kobalt Music Publishing America, Inc., Defendants.

Civil Action No. 08–11727–NMG.

United States District Court,
D. Massachusetts.

April 3, 2009.

Amy B. Auth, David A. Bunis, Daniel J. Cloherty, Dwyer & Collora, LLP, Scott D. Brown, Matthew J. Matule, Skadden, Arps, Slate, Meagher & Flom LLP, Boston, MA, Kenneth A. Plevan, Skadden, Arps, Slate, Meagher & Flom, New York, NY, Clifford M. Sloan, Skadden, Arps, Slate, Meagher & Flom LLP, Washington, DC, for Defendants.

## MEMORANDUM & ORDER

GORTON, District Judge.

The plaintiff, *pro se*, brings this case against numerous defendants for alleged copyright infringement and violations of the Lanham Act and the Massachusetts Consumer Protection Act, M.G.L. c. 93A. He claims that a song he wrote about the Boston Red Sox was unlawfully copied and used to create an advertisement promoting Major League Baseball post-season telecasts.

## I. *Background*

### A. Factual Background

The plaintiff, Samuel Bartley Steele ("Steele"), along with two "unincorporated business organizations," Steele Publishing Company and Steele Recordz (for convenience, all of the plaintiffs are hereinafter collectively referred to as "Steele"), are residents of Chelsea, Massachusetts. Steele is a songwriter and musician who asserts that, in 2004, he wrote a "love anthem" about the Boston Red Sox ("Red Sox") entitled "Man I Really Love This Team" ("the Steele Song"). Not surprisingly, Steele's song gained popularity around Fenway Park, the Red Sox historic stadium, in the fall of 2004 as the team played toward its first World Series Championship in 86 years.

Steele registered his song with the American Society of Composers, Authors and Publishers ("ASCAP") and, in 2006, applied for and received a federal copyright registration. Steele also maintains that he created a "derivative" version of the song entitled "Man I Really Love This Town" ("the Derivative Song"). That version, which was developed as a marketing concept, removed specific references to the Red Sox and left blanks where the names of other teams and cities could be filled in.

Steele asserts in his original complaint that the Derivative Song was included in his copyright registration but later admits (in his opposition to the defendants' motion to dismiss his amended complaint) that the Derivative Song "was not included on the CD deposited with the copyright office." Steele maintains that he nevertheless informed MLB of some of the lyrics of the Derivative Song.

Steele's claim for copyright infringement purports to arise from an advertisement produced and aired by the defendant Turner Broadcasting System, Inc. ("TBS") during the 2007 MLB post-season ("the TBS Promo"). The TBS Promo features a song by the popular band Bon Jovi entitled "I Love This Town" ("the Bon Jovi Song") along with baseball footage. Bon Jovi front-man John Bongiovi and guitarist Richard Sambora are also named as defendants.

Steele asserts that the Bon Jovi Song and the TBS Promo infringe his copyright. With respect to the TBS Promo, Steele asserts that it was unlawfully derived from his work through a method called "temp tracking." According to Steele, that term refers to the use of a song as a template to create an audio visual work which, in turn, is used to create a final soundtrack. According to Steele, much of the visual portion of the TBS Promo is derived from his song and the Bon Jovi Song was then based upon that Promo, the Steele Song or both.

In addition to his claim for copyright infringement, Steele also brought claims pursuant to the Lanham Act in his original complaint and Chapter 93A in his amended complaint. Although the Lanham Act claim was omitted from the amended complaint, Steele asserts he did not intend to drop that claim and that the complaints should be read together.

### B. Procedural History

Steele filed his initial complaint (with attachments) alleging copyright infringement and violation of the Lanham Act on October 8, 2008. Two months later a group of defendants filed a motion to dismiss and were joined in that motion by most of the remaining defendants shortly thereafter. On January 30, 2009, Steele simultaneously filed an opposition to the motions to dismiss and an amended complaint. The amended complaint added the Red Sox as a defendant and a Chapter 93A claim but did not include the attachments submitted with the initial complaint nor any claim for violation of the Lanham Act.

On February 18, 2009, a group of defendants moved to dismiss the amended complaint. They were eventually joined in that motion by all of the remaining defendants with the exception of Island Def Jam Records. A number of those defendants ("the Non–Implicated Defendants") also assert, as a separate ground for dismissal, that they are in no way implicated in the allegations of either complaint.[1]

Steele opposed the motions to dismiss on March 4, 2009, and, in doing so, asserted that he intended his amended complaint to be read together with his original complaint and, thus, did not intend to waive his Lanham Act claim. Both the Primary and Non–Implicated Defendants have replied to Steele's opposition.

## II. *Analysis*

### A. Legal Standard

In order to survive a motion to dismiss for failure to state a claim under Fed. R.Civ.P. 12(b)(6), a complaint must contain factual allegations sufficient "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965, 167 L.Ed.2d 929 (2007). In considering the merits of a motion to dismiss, the court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken. *Nollet v. Justices of the Trial Court of Mass.*, 83 F.Supp.2d 204, 208 (D.Mass.2000) *aff'd*, 248 F.3d 1127 (1st Cir.2000). Furthermore, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Langadinos v. American Air-*

*lines, Inc.*, 199 F.3d 68, 69 (1st Cir.2000). If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied. *See Nollet*, 83 F.Supp.2d at 208.

### B. Steele's Two Complaints

■ Although amending a complaint ordinarily renders the original complaint inoperative, *Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir.2008), Steele maintains that was not his intent. He asks the Court, in light of his *pro se* status, to consider his original and amended complaints together. The First Circuit Court of Appeals has instructed that "*pro se* pleadings are to be liberally construed, in favor of the *pro se* party." *Ayala Serrano v. Lebron Gonzalez*, 909 F.2d 8, 15 (1st Cir.1990). Here, that directive is best complied with by accommodating Steele's request and reading his original and amended complaints together.

### C. Lanham Act Claim

■ Steele's Lanham Act Claim, which is herein considered despite its omission from the amended complaint, is, nonetheless, without merit. The essence of Steele's claim is that the defendants engaged in illegal "palming-off" because the Bon Jovi Song and TBS Promo did not give credit to him as the song's true creator. Such allegations, however, are precisely the kind that the Supreme Court has held are not entitled to protection under the Lanham Act. *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37, 123 S.Ct. 2041, 156 L.Ed.2d 18 (2003).

---

1. The Non–Implicated Defendants are Fox Broadcasting Company ("Fox"), Sony ATV Tunes LLC ("Sony"), A & E Television Networks ("A & E"), AEG Live LLC ("AEG"), Vector 2 LLC ("Vector"), Universal Music Publishing ("Universal Publishing"), Universal Polygram International Publishing, Inc. ("Universal–Polygram") and Mark Shimmel Music ("Shimmel"). The remaining defendants will be referred to as "the Primary Defendants."

The Lanham Act, in addition to protecting trademarks, prohibits conduct that could lead to confusion with respect to the "origin, sponsorship, or approval" of goods or services. 15 U.S.C. § 1125(a)(1)(A); *see Dastar*, 539 U.S. at 28–29, 123 S.Ct. 2041 (citation omitted). In *Dastar*, however, the Supreme Court held that the "origin of goods" aspect of the Lanham Act refers to "the producer of the tangible goods that are offered for sale, and not ... the author of any idea, concept or communication embodied in those goods." 539 U.S. at 37, 123 S.Ct. 2041 (citation omitted). Here, because Steele does not assert that he is the producer of any tangible goods distributed by the defendants, but rather the artist whose creative work was allegedly contained in those goods, he fails to state a claim pursuant to the Lanham Act. *See id.* (explaining that creative talent is protected by copyright law and not the Lanham Act).

### D. Chapter 93A Claim

██ Plaintiff's claim pursuant to M.G.L. c. 93A also fails as a matter of law because it is preempted by the Copyright Act. *See* 17 U.S.C. § 301. The Copyright Act preempts a state law claim if 1) the work involved falls within the "subject matter of copyright" and 2) the state law claim incorporates no "extra element" that is qualitatively different from the copyright claim. *Patricia Kennedy & Co., Inc. v. Zam–Cul Enterprises, Inc.*, 830 F.Supp. 53, 55–56 (D.Mass.1993) (citation omitted).

Here, based on the allegations in the amended complaint, Steele's Chapter 93A claim is indistinguishable from his copyright claim in that it alleges only that the defendants unlawfully copied his work. Because musical works fall within the subject matter of copyright, 17 U.S.C. § 102, and because there is nothing qualitatively different about Steele's Chapter 93A claim, that claim is preempted by the Copyright Act and will be dismissed. *See Patricia*

*Kennedy & Co.*, 830 F.Supp. at 55–56 (citation omitted).

### E. The Non–Implicated Defendants

The Non–Implicated Defendants have moved to dismiss Steele's claims on the ground that the allegations against them (to the extent there are any) fail to state a claim upon which relief can be granted. Even reading the original and amended complaints together, this Court concludes that some of the Non–Implicated Defendants must be dismissed.

In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court clarified that, not only must a complaint give the defendant fair notice of the claim against it but also that the "[f]actual allegations must be enough to raise a right to relief above the speculative level." 127 S.Ct. at 1964–65. Steele has not met that burden with respect to some of the Non–Implicated Defendants.

██ Two of the defendants (Sony and Vector), apart from being identified as such, are not mentioned anywhere in either complaint. Other defendants are mentioned but in no way implicated in any wrongdoing. Defendant Fox, for example, is merely identified as being involved in an agreement with MLB and TBS to air the baseball post-season telecasts on cable television. Although Steele, in opposing the motion to dismiss, maintains that Fox used the infringing advertisement on its networks, assertions in an opposition to a motion are not the equivalent of factual pleadings. To allow Steele to plead facts in such a manner would grant too much leeway to a *pro se* plaintiff at the expense of orderly procedure and would deprive the defendants of clear notice of the allegations against them.

██ Steele's allegations with respect to Universal Publishing are similarly incapa-

ble of sustaining a claim against that defendant. Steele alleges only that Universal Publishing sent him an email about his ASCAP claim and stated that it would be working to resolve the issue on Mr. Bongiovi's behalf. That allegation in no way suggests that Universal Publishing was complicit in any copyright infringement or other wrongdoing.

With respect to the remaining Non–Implicated Defendants (Shimmel, A & E, AEG and Universal Polygram), each is alleged to have had some involvement in the production or promotion of the infringing works (or, in the case of Universal Polygram, the copyrighting of infringing work). This Court concludes that such allegations, although only marginally implicative, are sufficient to withstand a motion to dismiss.

### F. Copyright Infringement Claim

As an initial matter, this Court notes that the only work at issue for which Steele has registered a copyright is the Steele Song. To the extent that Steele maintains that other works, such as his Derivative Song, have been infringed, this Court lacks jurisdiction over such claims. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). Therefore, this Court will consider only plaintiffs' claim as it relates to the Steele Song.

To succeed on a claim of copyright infringement, a plaintiff must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 113 L.Ed.2d 358 (1991). As part of the second prong, a plaintiff must prove that the copyrighted and infringing works are "substantially similar." *Johnson v. Gordon*, 409 F.3d 12, 18 (1st Cir.2005) (citation omitted).

In determining substantial similarity, courts apply an "ordinary observer," or, in musical terms, an "ordinary listener" test. *Id.* A defendant's work is substantially similar to the copyrighted work only if

an ordinary person of reasonable attentiveness would, upon listening to both, conclude that the defendant unlawfully appropriated the plaintiff's protectable expression.

*Id.* Importantly, for a plaintiff to succeed the substantial similarity must relate to *original* elements of the copyrighted work. *See id.* at 18–19 (citing *Feist,* 499 U.S. at 361, 111 S.Ct. 1282).

Although the issue of substantial similarity (or lack there of) is ordinarily one for the factfinder, it can be decided by the Court as a matter of law. *See Johnson,* 409 F.3d at 18. According to the First Circuit Court of Appeals:

[s]ummary judgment on this issue is appropriate only when a rational factfinder, correctly applying the pertinent legal standards, would be compelled to conclude that no substantial similarity exists between the copyrighted work and the allegedly infringing work.

*Id.*

Here, the defendants suggest that this Court can make the substantial similarity determination on a motion to dismiss because both the original and allegedly infringing works are properly before the Court. The Court, they argue, can simply listen to (and view) those works and apply the ordinary listener standard to determine whether there is any colorable claim of substantial similarity.

Although there is intuitive appeal to such an approach, motions to dismiss cannot be transformed into motions for sum-

mary judgment for mere expediency. A plaintiff is entitled to gather and present evidence of substantial similarity beyond what is included in the pleadings and the First Circuit has observed that in musical copyright cases experts are frequently relied upon. *See Johnson,* 409 F.3d at 19. This Court concludes that the most prudent course of action is to permit, at this stage, limited discovery on the issue of substantial similarity. Upon the completion of that discovery the Court will entertain motions for summary judgment on that specific issue and proceed (or not proceed) accordingly.

It is worth reiterating that discovery is to be restricted to the issue of substantial similarity and the parties will not be permitted to engage in discovery relevant to other aspects of the case, including, without limitation, who had access to Steele's copyrighted work or when or who was responsible for the creation of the allegedly infringing works. Steele may offer, by affidavit, expert analysis of his work or the infringing work as deemed necessary and the Court will consider such analysis in making the substantial similarity determination. Any affidavit or other evidence presented to the Court must be in compliance with Fed.R.Civ.P. 56.

## ORDER

In accordance with the foregoing, this Court rules as follows:

1) Defendants' motions to dismiss (Docket Nos. 17, 24, 29 and 33), all of which were filed before the plaintiffs amended their complaint, are **DENIED** as **MOOT**;

2) The motion of the Non–Implicated Defendants to dismiss (Docket No. 52) is, with respect to defendants Fox Broadcasting Company, Sony ATV Tunes LLC and Vector 2 LLC, **ALLOWED** but is otherwise **DENIED**;

3) the motions to dismiss of defendant Mark Shimmel Music (Docket No. 58) and defendant Kobalt Music Publishing America (Docket No. 64) are **DENIED**;

4) the motion of defendants Universal Music Publishing and Universal Polygram International Publishing to dismiss (Docket No. 71) is, with respect to defendant Universal Music Publishing, **ALLOWED** but is otherwise **DENIED**;

5) The defendants' motions to dismiss (Docket Nos. 48 and 76) are **DENIED**; and

6) limited discovery will proceed as follows:

a) all discovery relevant to the issue of substantial similarity will be completed on or before May 31, 2009;

b) dispositive motions with respect to substantial similarity will be filed on or before June 26, 2009, and oppositions will be filed on or before July 17, 2009;

c) a hearing on any pending dispositive motion will be held on Wednesday, August 12, 2009, at 3:30 PM in Courtroom 4 of the John Joseph Moakley Courthouse in Boston, Massachusetts.

**So ordered.**